UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAKOWER LAW PLLC,

                            Plaintiff,

- against -

RICARDO BERNER and PRACTIKO, LLC

                            Defendants.

Case No. 21 Civ 6439 (PGG)

---

**MEMORANDUM OF LAW IN SUPPORT OF RAKOWER LAW PLLC'S MOTION TO DISQUALIFY AXS LAW GROUP, PLLC AS COUNSEL FOR DEFENDANTS <u>RICARDO BERNER AND PRACTIKO, LLC</u>**

 

**RAKOWER LAW PLLC**
Michael C. Rakower
Melissa Yang
260 Madison Avenue, 15th Fl.
New York, NY 10016
(212) 660-5550

*Attorneys for Plaintiff Rakower Law PLLC*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................................................... ii

**PRELIMINARY STATEMENT** ................................................................................................ 1

**FACTUAL BACKGROUND** ..................................................................................................... 2

**ARGUMENT** ............................................................................................................................... 8

   I.   AXS MUST BE DISQUALIFIED AS TRIAL COUNSEL TO DEFENDANTS ............... 9

      A.  AXS Must Be Disqualified Under the Advocate-Witness Rule Because Mr. Gutchess is a Material and Necessary Witness Who Will Provide Prejudicial Testimony .............. 9

      B.  AXS Must Be Disqualified Because It Cannot Exercise Independent Legal Judgment for Defendants' Benefit When It Faces Personal Liability to the Firm for Its Invoices ....... 13

**CONCLUSION** ......................................................................................................................... 15

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Balestriere PLLC v. BanxCorp*,
  96 A.D.3d 497 (N.Y. App. Div. 2012) .................................................................................. 13

*Bd. of Ed. of City of New York v. Nyquist*,
  590 F.2d 1241 (2d Cir. 1979) ................................................................................................. 8

*Crews v. Cty. of Nassau*,
  No. 06-CV-2610 JFB WDW, 2007 WL 316568 (E.D.N.Y. Jan. 30, 2007) ............................ 14

*Decker v. Nagel Rice LLC*,
  716 F. Supp. 2d 228 (S.D.N.Y. 2010) ............................................................. 10, 12, 14, 15

*First NBC Bank v. Murex, LLC*,
  259 F. Supp. 3d 38 (S.D.N.Y. 2017) .................................................................................. 8, 9

*Giuffre v. Dershowitz*,
  410 F. Supp. 3d 564 (S.D.N.Y. 2019) ........................................................................ 8, 9, 10

*Gleason v. Zocco*,
  941 F. Supp. 32 (S.D.N.Y. 1996) ................................................................................... 10, 14

*Gov't of India v. Cook Indus., Inc.*,
  569 F.2d 737 (2d Cir. 1978) ................................................................................................... 8

*Hall, Lamb & Hall, P.A. v. Sherlon Invs. Corp.*,
  7 So. 3d 639 (Fla. Dist. Ct. App. 2009) .......................................................................... 13, 14

*Hempstead Video, Inc. v. Incorporated Village of Valley Stream*,
  409 F. 3d 127 (2d Cir. 2005) ................................................................................................. 8

*Hull v. Celanese Corp.*,
  513 F.2d 568 (2d Cir. 1975) ................................................................................................... 8

*Kaplan v. Reuss*,
  113 A.D.2d 184 (N.Y. App. Div. 1985) ............................................................................... 14

*Moses & Singer L.L.P. v. S&S Mach. Corp.*,
  251 A.D.2d 271 (N.Y. App. Div. 1998) ............................................................................... 12

*Munk v. Goldome Nat. Corp.*,
  697 F. Supp. 784 (S.D.N.Y. 1988) ......................................................................................... 9

*Pierce & Weiss, LLP v. Subrogation Partners LLC*,
  701 F. Supp. 2d 245 (E.D.N.Y. 2010) .................................................................................. 13

*Prout v. Vladeck*,
  316 F. Supp. 3d 784 (S.D.N.Y. 2018) .................................................................................. 10

Statutes

N.Y. Judiciary Law § 475 ............................................................................................................ 13

Plaintiff Rakower Law PLLC ("Rakower Law" or the "Firm") respectfully submits this memorandum of law in support of its Motion to Disqualify AXS Law Group, PLLC ("AXS") as counsel for Defendants Ricardo Berner and Practiko, LLC (the "Motion to Disqualify") pursuant to the advocate-witness rule and because AXS's continued representation of Ricardo Berner ("Berner") and Practiko, LLC ("Practiko," together with Berner, the "Defendants") creates a conflict of interest where they cannot exercise independent professional judgment.

**PRELIMINARY STATEMENT**

AXS served as co-counsel with Rakower Law representing Defendants in a Florida action for approximately one year. The fee dispute giving rise to the herein action arose from the Florida action. Defendants' defenses are premised upon information about which Jeffrey Gutchess has first-hand knowledge. Mr. Gutchess will be a witness in this action. Hence, neither he nor AXS, the law firm he leads, may represent Defendants in the instant case.

According to Defendants, the Firm overcomplicated the Florida case by drafting a complaint that cast too wide of a net with causes of action that named several defendants, and the Firm caused prejudicial harm to Defendants when it reduced its involvement during discovery and when it withdrew from the action following discovery. These defenses are premised upon falsehoods. The Firm intends to call Mr. Gutchess, a material and necessary witness, to refute these false defenses.

Mr. Gutchess worked with Defendants and Rakower Law to succeed the Firm as lead counsel in the Florida action because Defendants could not meet their financial obligations to the Firm. He will testify as to the lead time AXS was granted to get acclimated to the case prior to depositions, the assistance the Firm provided to AXS at the outset of its representation, the understanding that Mr. Gutchess shared with Defendants and Rakower Law about the likelihood

that he would serve as lead trial counsel, the scope of work required of AXS when it became successor counsel in the Florida case, whether and how AXS's workload changed when the Firm withdrew from the Florida Action, and the extent to which, if any, Defendants were obliged to pay AXS for work rendered to undo or re-do allegedly poor work performed by Rakower Law.

Aside from the disqualification necessitated by the advocate-witness rule, AXS should be disqualified for the separate reason that it cannot exercise independent legal judgment where it faces liability to the Firm for Defendants' outstanding fees. AXS assisted Defendants in violating the Firm's charging lien in the Florida action so that Defendants could receive settlement proceeds and AXS, presumably, could receive its contingency fee. Under the law, AXS now faces liability to the Firm for its breach.

## FACTUAL BACKGROUND

The following factual background derives from the pleadings filed in this action; the assertions made in, and documents annexed to, the accompanying Declaration of Melissa Yang, dated January 26, 2022, (the "Yang Decl."); and the assertions made in the accompanying Declaration of Michael C. Rakower, dated January 26, 2022 (the "Rakower Decl.").

\*\*\*

On May 24, 2021, the Firm commenced this action to recover unpaid legal fees and expenses from Defendants by asserting a claim for breach of contract and, in the alternative, claims for implied in fact contract, unjust enrichment, quantum meruit, and promissory estoppel. (Dkt. 1 (Notice of Removal and Summons and Complaint).) Defendants removed the action, originally commenced in the New York Supreme Court, County of New York, to this Court on July 28, 2021. (*See generally id.*) On January 12, 2022, the Firm filed an amended complaint that added a claim for an account stated. (Dkt. 25 (First Amended Compl.).)

2

As of January 1, 2022, Defendants owe the Firm $153,591.99 in fees and expenses, inclusive of interest, arising from work performed in *Ricardo Berner and Practiko, LLC v. WM Partners, LP, et al.*, Case No. 2018-008110-CA-01, filed in the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County (the "Florida Action"). (Yang Decl., Ex. 2 (Matter Ledger) at 9; Rakower Decl. ¶ 14.) The Florida Action centered on a dispute between Berner and his former employer over contractual compensation worth approximately $4 million. (*See* Rakower Decl. ¶¶ 3, 14.)

The Florida Action was complex. Whereas New York law generally governed the dispute, in certain instances the laws of Florida and the Cayman Islands applied, raising a variety of complex conflicts of law issues. Moreover, Berner's former employer was led by two billionaires, and Berner was concerned that those billionaires would abscond with the contested funds and leave the employer entity effectively judgment-proof. (Rakower Decl. ¶ 9.) For this reason, Berner insisted that the Florida Action cast a wide net to include as defendants not just the former employer but also its principals and various related offshore affiliates. (*Id.*) At Defendants' insistence, the pleading in the Florida Action included 13 causes of action collectively alleging liability against all of these individuals and entities. (Rakower Decl. ¶ 14.) Following a motion to dismiss, the Firm succeeded in maintaining 11 of 13 causes of action, garnering high praise from Defendants. (*Id.*)

Initially, Foley & Lardner LLP ("Foley") served as local counsel in the Florida Action as the Firm's lawyers are not licensed to practice in Florida. (Rakower Decl. ¶ 12.) In or about August 2018, Foley advised that it wished to withdraw. (Rakower Decl. ¶ 15.) Around this time, Defendants began to accrue an outstanding balance with the Firm. (Rakower Decl. ¶ 17.) Defendants cited cash flow problems as the basis for their delay in payment. (Rakower Decl. ¶

3

18.) In December 2018, Defendants owed the Firm $111,718.18. (Rakower Decl. ¶ 19; Yang Decl., Ex. 2 (Matter Ledger) at 4.) Rather than terminate the engagement, the Firm and Defendants agreed that Defendants would hire new local counsel to spearhead discovery and possibly take over as trial counsel (Rakower Decl. ¶ 20); in the short term, the Firm would take a backseat role in the Florida Action and, if Defendants paid off their balance, potentially resume as lead trial counsel (*id.* ¶¶ 20, 21).

For many weeks, the Firm assisted Defendants in locating and interviewing potential new local counsel. (Rakower Decl. ¶ 24.) On or about February 11, 2019, Michael C. Rakower ("Rakower") and Berner convened an in-person meeting for approximately two hours with then-potential counsel Jeffrey Gutchess, Esq. of AXS. (Rakower Decl. ¶ 24; Yang Decl., Ex. 11 (Defendants' Admissions) at No. 68.) At this meeting, the parties discussed the background and strategy of the Florida Action and the role contemplated for new local counsel, including the understanding that the Firm would take a secondary role at least until Defendants caught up with their payment obligations. (Rakower Decl. ¶ 24.) Defendants retained AXS in or about February 2019. (Yang Decl., Ex. 11 (Defendants' Admissions) at No. 67.) Per its engagement with Defendants, AXS was to serve as lead trial counsel in the Florida Action and would be paid, in part, through a success fee. (*Id.* at Nos. 69, 70.)

AXS entered an appearance in the Florida Action on March 5, 2019, months before any depositions commenced. (Yang Decl., Ex. 6-A (Firm Withdrawal Motion) ¶ 2; Yang Decl., Ex. 12 (Notice of Deposition).) Before and after those depositions, the Firm worked alongside AXS in a supportive role, maintaining periodic discussions with Mr. Gutchess and other AXS attorneys, including Anthony Narula, Esq. and Alice Ferot, Esq., about legal strategy in the Florida Action. (Yang Decl. ¶¶ 16, 17, 18.) While Defendants made some payments to the Firm throughout 2019

(Yang Decl., Ex. 2 (Matter Ledger) at 4–6; *see also* Yang Decl., Ex. 11 (Defendants' Admissions) at Nos. 54, 55, 56 (admitting Practiko made some payments to the Firm in 2019)), a large outstanding balance of $126,747.33 remained by the end of that year (Yang Decl., Ex. 2 (Matter Ledger) at 7). As a result, the Firm wished to withdraw as counsel. (Rakower Decl. ¶ 30.) On behalf of Defendants, Ms. Ferot prepared the templates the Firm would use and requested that the Firm delay its withdrawal until the conclusion of a mandatory mediation in the Florida Action, scheduled for December 2019. (*See* Yang Decl., Ex. 5 (Ferot Emails) at 1–2.) The Firm complied. (*See* Yang Decl., Ex. 6-A (Firm Withdrawal Motion) (reflecting withdrawal motion filed on January 15, 2020).) When the mediation failed, AXS attorney Narula filed the withdrawal papers with the court. (Yang Decl., Ex. 6-A (reflecting Narula as the filer).) The court in the Florida Action approved the Firm's withdrawal on January 16, 2020. (Yang Decl., Ex. 6-B (Withdrawal Order).)

With respect to Defendants' outstanding invoices, Mr. Gutchess recommended that Defendants and the Firm sign a private agreement obligating Defendants to pay the sum due immediately upon settlement of the Florida Action. (Rakower Decl. ¶ 33.) When Defendants refused (Rakower Decl. ¶ 34), the Firm not only filed a charging lien in the Florida Action on March 2, 2020, but it also emailed and mailed copies of the lien to AXS and each of the parties in the Florida Action (Rakower Decl. ¶ 35; Yang Decl., Ex. 8 (Charging Lien)). Based on the Order of Dismissal in the Florida Action, Defendants reached a settlement on or about March 3, 2020. (Yang Decl., Ex. 13 (Order of Dismissal) (stating parties notified in open court on March 3, 2020 that matter was resolved).) With AXS's knowing assistance, settlement funds were remitted to Defendants in violation of the Firm's charging lien. (Rakower Decl. ¶¶ 36, 37.) The Firm was not notified of the settlement at or around the time it was consummated. (Rakower Decl. ¶ 36; Yang

5

Decl., Ex. 3 (July 2020 Emails).)  The Firm lacks knowledge of the settlement terms, including the sum paid to Defendants.  (Rakower Decl. ¶ 36.)

The Firm regularly sent monthly invoices to Defendants reflecting fees and interest accrued.  (Rakower Decl. ¶ 7.)  Defendants had expressed a concern about litigation costs, and the Firm had attempted on several occasions to negotiate an alternative fee structure that would ease Defendants' upfront costs.  (*See generally* Yang Decl., Ex. 1 (7/9/18 Emails); *id.*, Ex. 4 (7/22/18 Emails).)  Until an alternative fee structure was reached, however, the parties agreed that the Firm's engagement letter, which contemplated an hourly billing arrangement, would be applied.  (*See* Yang Decl., Ex. 4 (7/22/18 Emails) at 1 ("As you mentioned, until we don't change the terms we are under the previous agreement.")  On July 9, 2018, the Firm sent a monthly invoice to Defendants for work rendered in June 2018.  (Yang Decl., Ex. 1 (7/9/18 Emails) at 5.)  Defendants challenged that invoice in an email from Berner where he stated, "I cannot accept this invoice." (*Id.* at 3.)  Defendants did not articulate a reason for their objection other than that the bill was large.  (Rakower Decl. ¶ 18.)  Thereafter, Defendants reaffirmed their payment obligations in an email from Berner on July 22, 2018 stating, "I will honor my commitment, by now you know what kind of individual I am, and truly appreciate you helping me going through this beyond the legal matters … I've made a deposit already (please let me know if you received it) and another one will be done this week."  (Yang Decl., Ex. 4 (7/9/18 Emails) at 1.)  Indeed, that month, Defendants made two payments totaling $30,000 toward the sum due under the July invoice.  (Rakower Decl. ¶ 18; Yang Decl., Ex. 2 (Matter Ledger) at 2.)

Defendants continued to make periodic payments to the Firm until in or about September 2019.  (Yang Decl, Ex. 2 (Matter Ledger) at 2–9.)  Even when their payments stopped, ostensibly due to cash flow problems, Defendants reaffirmed their obligation to pay, including in an email by

Berner, dated March 2, 2020, stating, "As I always stated my intention is to pay you as soon as I have the funds which I do hope to be soon."  (Yang Decl., Ex. 7 (3/2/20 Email) at 1.)  But in February 2021, more than a year after the Firm withdrew as counsel (*see* Yang Decl., Ex. 6-B (granting the Firm's motion to withdraw on January 16, 2020)) and, almost a year after the parties in the Florida Action reached a settlement (*see* Yang Decl., Ex. 13 (Order of Dismissal) (stating parties notified court that a resolution was reached on March 3, 2020)), Defendants challenged the Firm's fees when Berner wrote, "[t]he amount pending is an amount in dispute because I did not approve the excessive unnecessary hours you generated, even beyond the excessive hours you caused me to pay other lawyers to resolve many issues and duplicative work." (Yang Decl., Ex. 9 (2021 Email Chain) at 4.)  This position marked a sea change from Defendants' prior representations.  When the Firm requested that Defendants explain the basis for their challenge, including the "duplicative work by other lawyers" (*id.* at 2–4), Berner responded, "I don't think it is in my best interest to provide you with this information at this time" (*id.* at 1).

Defendants did not explain their challenge until this action was commenced.  In their Answer and Affirmative Defenses (dkt. 4), Defendants contend that Rakower abandoned the case at a critical juncture and that the Firm overcomplicated the case by turning "a simple breach of contract action … into a 13-count complaint against multiple defendants" and thereby causing excessive legal fees (*id.* at 6–7).[1]

In a joint letter to the Court submitted by the parties in advance of the initial pretrial conference, Defendants asserted that Rakower's overseas travel effectively left them without counsel and that Plaintiff's withdrawal "on the eve of trial" forced them "to engage new counsel to finalize the matter."  (Dkt. 8 (10/28/21 Joint Letter to the Court) at 4.)  Yet, prior to this action,

---

[1] We cited to Defendants' Answer and Affirmative Defenses (dkt. 4) because Defendants have not yet filed a response to the Firm's First Amended Complaint (dkt. 25).

7

Defendants had asserted that Rakower Law's withdrawal as counsel would not delay the progression of the Florida Action "as AXS will remain counsel for [Berner and Practiko], has been litigating this case for the past 10 months, and is fully apprised of all aspects of the case." (Yang Decl., Ex. 6-A, ¶ 4.)

In light of Defendants' defenses asserted in this action, the Firm served a subpoena *ad testificandum* to obtain Mr. Gutchess' testimony. (Yang Decl., Ex. 10 (Subpoena).)

## ARGUMENT

Courts may disqualify counsel based on their inherent authority to preserve the integrity of the adversarial process. *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F. 3d 127, 132 (2d Cir. 2005) (internal citation omitted). When assessing whether to disqualify counsel, courts balance a client's right to be represented by counsel of its choosing against "the need to maintain the highest standards of the profession." *Id.* (citing *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978)). While courts consider guidance from the American Bar Association and state disciplinary rules, not every rule violation will result in disqualification. *Id.* (citing *Bd. of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) ("*Nyquist*")). Conversely, in the absence of a clear breach, courts may nonetheless choose to disqualify counsel to preserve the integrity of the adversarial process. *First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38, 56 (S.D.N.Y. 2017) (citing *Nyquist*, 590 F.2d at 1246).

Although motions to disqualify are disfavored, the Second Circuit has made it plain that any doubts should be resolved in favor of disqualification. *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975); *see also Giuffre v. Dershowitz*, 410 F. Supp. 3d 564, 570 (S.D.N.Y. 2019) (same). Given that Plaintiff brings this Motion to Disqualify early in the action (indeed, prior to the production of any documents), Defendants will not be prejudiced if they are required to secure

8

new counsel. *See Munk v. Goldome Nat. Corp.*, 697 F. Supp. 784, 788 (S.D.N.Y. 1988) (stating the interests of the parties and the judicial system are best served by disqualifying counsel early and acknowledging it is more economical to seek new counsel early in a litigation).

I.     **AXS MUST BE DISQUALIFIED AS TRIAL COUNSEL TO DEFENDANTS**

AXS must be disqualified as defense counsel in this action to avoid trial taint. *See First NBC Bank*, 259 F. Supp. 3d at 56 (recognizing trial taint occurs when attorney cannot exercise independent judgment on behalf of a client). *First*, AXS cannot act as trial counsel to Defendants under the advocate-witness rule because Mr. Gutchess is a material and necessary witness whose anticipated testimony will *refute* Defendants' asserted defenses herein. Given that Mr. Gutchess has personal knowledge that Defendants' defenses are premised upon falsehoods, Mr. Gutchess also should be disqualified because he cannot maintain his duty of candor to this Court while advocating Defendants' line of defenses. *Second*, AXS is conflicted as counsel because it has a personal interest in avoiding liability to the Firm where AXS knowingly assisted Defendants in violating the Firm's charging lien.

   A. **AXS Must Be Disqualified Under the Advocate-Witness Rule Because Mr. Gutchess is a Material and Necessary Witness Who Will Provide Prejudicial Testimony**

The advocate-witness rule precludes counsel from representing a party in an action if counsel will also be called as a witness. *Giuffre*, 410 F. Supp. 3d at 578; N.Y. R. Prof'l Conduct § 3.7. When a party other than the client calls counsel to testify on a significant issue and "it is apparent that the testimony may be prejudicial to the client[,]" then the advocate-witness rule requires disqualification of counsel *and* counsel's law firm. N.Y. R. Prof'l Conduct § 3.7(b)(1) ("A lawyer may not act as advocate before a tribunal in a matter if ... another lawyer in the lawyer's firm is likely to be called as a witness….") The party seeking disqualification bears the burden of showing that counsel's testimony is necessary and substantially likely to be prejudicial. *Giuffre*,

9

410 F.Supp. 3d at 578. When assessing whether testimony is necessary, courts consider the significance of the matter, the weight of the testimony, and availability of other evidence and witnesses. *Prout v. Vladeck*, 316 F. Supp. 3d 784, 809 (S.D.N.Y. 2018).

Here, the entire firm of AXS must be disqualified pursuant to N.Y. R. Prof'l Conduct § 3.7(b)(1). Jeffrey Gutchess (AXS partner and Defendants' lead counsel here and in the Florida Action) is a material and necessary witness whose anticipated testimony will refute the contentions that (i) Rakower abandoned the Florida Action "[j]ust as discovery and depositions were to commence," thereby prejudicing Defendants, (ii) Plaintiff withdrew from the Florida Action on the eve of trial, thereby prejudicing Defendants who were forced to engage new counsel to finish the case, and (iii) Plaintiff generated excessive fees by placing Defendants in a position where they were obliged to "pay other lawyers to resolve many issues and duplicative work[.]" (Dkt. 4 (Defs' Answer and Affirmative Defenses) at 6–7; Yang Decl., Ex. 9 (2021 Email Chain) at 4.)

Mr. Gutchess is a necessary and material witness because he served as co-counsel with Rakower Law for approximately a year and he had personal involvement in the underlying dispute that led to this action. *See Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 234 (S.D.N.Y. 2010) (concluding advocate-witness rule requires disqualification of counsel in malpractice action where counsel served as co-counsel in prior action wherein acts of alleged malpractice occurred); *Gleason v. Zocco*, 941 F. Supp. 32, 35 (S.D.N.Y. 1996) (disqualifying counsel due to "extensive personal involvement in every aspect of the underlying controversies that led to this lawsuit"); *Moses & Singer L.L.P. v. S&S Mach. Corp.*, 251 A.D.2d 271, 271 (N.Y. App. Div. 1998) (concluding defendants' counsel, who served as co-counsel in the litigation that gave rise to the disputed law firm invoices, must be disqualified as a necessary witness).

10

On or about February 11, 2019, Berner and Firm partner Michael Rakower convened a two-hour, in-person meeting with Mr. Gutchess to discuss the Florida Action and AXS's then-potential engagement as new local counsel. (Rakower Decl. ¶ 24.) At this meeting, the parties discussed the factual background, procedural history, and legal strategy of the Florida Action, including Mr. Gutchess's expected role. (*Id.*) Mr. Gutchess also spoke directly with Rakower both before and after this meeting about these same matters, and such discussions included the expectation that AXS would not only lead all discovery efforts, but that Mr. Gutchess and his team would almost surely serve as lead trial counsel. (Rakower Decl. ¶¶ 26, 27, 28.) The reason for this expectation was simple: Defendants appeared unlikely to fully satisfy their outstanding balance prior to trial, and, even if they did, it would likely be beneficial to Defendants to utilize AXS as lead trial counsel since AXS would be controlling all phases of discovery. (Rakower Decl. ¶¶ 20, 21, 24, 26.)

Mr. Gutchess's testimony will address the lead time he and his team were granted to learn the facts of the Florida Action and to function effectively in discovery.[2] He will testify as to the trial preparations AXS made from the outset of their engagement and the extent, if any, that Rakower Law's withdrawal from the Florida Action affected his preparation. *See, e.g.,* Yang Decl., Ex. 11 (Defendants' Admissions) at No. 70 (admitting AXS's engagement letter contemplated AXS would try the Florida Action for Defendants).[3] He will also testify about the work AXS performed and the fees charged for such work as his testimony will weigh heavily on

---

[2] AXS was engaged in February 2019 and depositions began in May 2019. (Yang Decl., Ex. 11 (Defendants' Admissions) at No. 67; Yang Decl., Ex. 12.)

[3] At all relevant times, Mr. Gutchess was aware that Defendants had not materially reduced their large outstanding balance and that, therefore, the Firm would not recommence its representation of Defendants in the Florida Action in any material way. (*See* Rakower Decl. ¶¶ 20, 21, 24, 26.)

11

Defendants' allegation that Rakower Law performed work that needed to be undone or redone by AXS in such manner as to cause Defendants to pay for excessive legal work.

With respect to Rakower Law's so-called late withdrawal, Mr. Gutchess will testify that the Firm delayed its withdrawal at Defendants' request, conveyed by AXS attorney Alice Ferot, who asked that the Firm postpone its withdrawal until after the conclusion of a court-ordered mediation in the Florida Action. (Rakower Decl. ¶ 32; Yang Decl., Ex. 5 (Ferot Emails) at 1.) Mr. Gutchess will also explain how the Firm's alleged withdrawal prejudiced Defendants (*see* dkt. 8 (10/28/21 Joint Letter to the Court) at 4 (stating Firm's withdrawal "on the eve of trial" forced Defendants "to engage new counsel to finalize the matter")), given that AXS prepared the Firm's withdrawal motion template (Yang Decl., Ex. 5 (Ferot Emails) at 2) and Defendants represented to the Court that the Firm's withdrawal "will not delay the progression of this litigation as AXS will remain counsel for Plaintiffs, has been litigating this case for the past 10 months, and is fully apprised of all aspects of the case" (Yang Decl. Ex. 6-A (Firm Withdrawal Motion) ¶ 4).

Mr. Gutchess's anticipated testimony implicates all four concerns underlying the advocate-witness rule. *Decker*, 716 F. Supp 2d at 232 (identifying four concerns). *First*, the work by Mr. Gutchess and AXS in the Florida Action raises a concern that Mr. Gutchess will skew his testimony in favor of Defendants to justify AXS's work and legal fees. *Decker*, 716 F. Supp. 2d at 234. *Second*, the Firm will be placed in the difficult position of having to impeach Mr. Gutchess's credibility at the same time that Mr. Gutchess will be advocating for Defendants. *Id. Third*, Mr. Gutchess may attempt to vouch for his own credibility given his personal involvement in the Florida Action. *Id.* Finally, Mr. Gutchess's simultaneous representation of Defendants and the need to defend his conduct will "blur the line between argument and evidence [such] that the jury's ability to find facts [will be] undermined." *Id.* (alterations in original).

12

Parenthetically, we expect Defendants to argue that the advocate-witness rule should apply equally to the Firm's counsel, who will be fact witnesses too. It does not. New York is clear that a law firm may represent itself in a fee dispute with a former client even though attorneys at the law firm will be fact witnesses. *Balestriere PLLC v. BanxCorp*, 96 A.D.3d 497, 498 (N.Y. App. Div. 2012) ("Defendants' attempt to disqualify plaintiff from representing itself in this fee dispute pursuant to the professional rules regarding conflict of interest is misplaced."); *Pierce & Weiss, LLP v. Subrogation Partners LLC*, 701 F. Supp. 2d 245, 252 (E.D.N.Y. 2010) (recognizing that law firm cannot be disqualified from representing itself in a suit to collect fees owed by a former client).

For the reasons set forth herein, AXS, including Mr. Gutchess, must be disqualified under the advocate-witness rule set forth in N.Y. R. Prof'l Conduct § 3.7(b).

### B. AXS Must Be Disqualified Because It Cannot Exercise Independent Legal Judgment for Defendants' Benefit When It Faces Personal Liability to the Firm for its Invoices

AXS was well aware of Defendants' debt to the Firm and had been served with a charging lien prior to a settlement in the Florida Action. (*Compare* Yang Decl., Ex. 8 (Charging Lien) (reflecting the charging lien was both filed in the Florida Action and emailed to all parties on March 2, 2020), *with* Yang Decl., Ex. 13 (Order of Dismissal) (stating parties notified court of a resolution on March 3, 2020.) AXS nonetheless assisted Defendants in violating the charging lien to facilitate payment of settlement proceeds to Defendants and, presumably, itself in the form of attorneys' fees. (Rakower Decl. ¶ 37.) The Firm intends to sue AXS for this breach in order to recover the fees owed to it.[4]

---

[4] *See* N.Y. Judiciary Law § 475 ("[T]he attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a … settlement … and the proceeds thereof in whatever hands they may come, and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination."); *Kaplan v. Reuss*, 113 A.D.2d 184, 187 (N.Y. App. Div.1985), *aff'd,* 68 N.Y.2d 693, 497 N.E.2d 671 (N.Y. 1986) (stating that a charging lien may be enforced against third parties who has knowingly paid the proceeds to the client so as to deprive the attorney of an earned fee); *Hall, Lamb & Hall, P.A. v. Sherlon Invs. Corp.*,

13

AXS should be disqualified because it cannot exercise independent judgment when representing Defendants in this action where it has a personal interest in avoiding its own liability to the Firm. *See* N.Y. R. Prof'l Conduct § 1.7(a)(2) ("[A] lawyer shall not represent a client if a reasonable lawyer would conclude that … there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests."); Canon 5 of the American Bar Association Code of Professional Responsibility (suggesting lawyer should exercise independent professional judgment on behalf of a client); Canon 9 of American Bar Association Code of Professional Responsibility (stating lawyer should avoid not only professional impropriety but also the appearance of impropriety); *see, e.g., Gleason*, 941 F. Supp. at 35 (disqualifying counsel because personal involvement in events underlying action creates "real and present danger that his personal interests will infringe on his professional representations in ways deleterious to his client"); *Crews v. Cty. of Nassau*, No. 06-CV-2610 JFB WDW, 2007 WL 316568 (E.D.N.Y. Jan. 30, 2007) (concluding counsel must be disqualified because, among other things, counsel's judgment on behalf of clients may be affected by counsel's personal interests in concealing alleged errors in representation).

AXS cannot reasonably be expected to advocate honestly and fairly for Defendants when it could be liable to the Firm for violating its charging lien. *See Decker*, 716 F. Supp. 2d at 235 (concluding counsel's presence as an attorney and as a likely third-party defendant presents a conflict of interest warranting disqualification because counsel could not reasonably maintain duty

---

7 So. 3d 639, 641–42 (Fla. Dist. Ct. App. 2009) (concluding law firm may hold former client, former client's successor counsel, and former client's adversary jointly and severally liable for failing to protect law firm's interests in settlement proceeds pursuant to firm's charging lien).

14

of candor while advocating for clients where he could be found liable if clients were not successful in malpractice action).

## CONCLUSION

For the reasons set forth herein, AXS must be disqualified as counsel to Defendants in this action.

Dated: New York, New York
       January 26, 2021

                                  **RAKOWER LAW PLLC**

                                  **By:** _____
                                        Michael C. Rakower
                                        Melissa Yang
                                  260 Madison Avenue, 15th Fl.
                                  New York, NY 10016
                                  Tel: (212) 660-5550
                                  Fax: (212) 660-5551
                                  mrakower@rakowerlaw.com
                                  myang@rakowerlaw.com

                                  *Attorneys for Plaintiff Rakower Law PLLC*