UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

RAKOWER LAW PLLC,

           Plaintiff,

     -v-                                No.  21-CV-06439-LTS

RICARDO BERNER and PRACTIKO, LLC,

           Defendants.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        Pending before the Court is the motion for summary judgment of Rakower Law PLLC ("Plaintiff" or the "Firm") on its account stated claim asserted against Ricardo Berner ("Berner") and Practiko, LLC ("Practiko" and, collectively, "Defendants").  (Docket entry no. 100 (the "Motion").)  The Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1332 and 1441.

        The Court has reviewed the parties' submissions thoroughly and, for the following reasons, Plaintiff's Motion is denied.

<u>BACKGROUND</u>

        The following material facts are drawn from the record and the parties' filings in connection with the pending Motion and are undisputed except where noted.[1]

---

[1]    Facts characterized as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 ("56.1 Statements") or drawn from evidence as to which there has been no contrary, non-conclusory factual proffer.  Citations to the parties' 56.1 Statements incorporate the parties' citations to the underlying evidentiary submissions and the opposing party's reply, if any.

On January 17, 2018, Berner, the owner and manager of Practiko, signed an engagement letter (docket entry no. 109-3 (the "Engagement Letter")) with Plaintiff to obtain prelitigation counseling concerning a developing dispute between Berner and his former employer, WM Partners, LP ("WMP").[2]  (Docket entry no. 121 ("56.1 Resp.") ¶¶ 1-2.)  The Engagement Letter provided that Berner would be charged the Firm's hourly fees and outlined the Firm's 2018 hourly fees for its attorneys and staff.  (Id. ¶ 3.)  The Engagement Letter further provided that invoices would be issued monthly, with fees due upon presentation, and that a late fee of fifteen percent per annum would be imposed upon any invoice that remained unpaid for more than thirty days.  (Id. ¶ 4.)  In the event of a fee dispute, the Engagement Letter stipulated that parties would submit to a binding fee arbitration, as specified therein, for fee disputes involving a sum of no more than $50,000.  (Id. ¶ 5.)

After prelitigation negotiations failed, Berner retained the Firm as legal counsel to represent himself and his company, Practiko.  (Id. ¶ 6.)  On March 6, 2018, the Firm emailed Berner an amendment to expand the scope of the Engagement Letter to include Practiko as a client and to include the Firm's litigation services in Florida, where the lawsuit against WMP was to be commenced.  (Id. ¶ 7.)  The amendment also contemplated a ten percent discount on the Firm's hourly fees.  (Id. ¶ 8.)  Berner never signed the amendment, but confirmed that its terms and the Engagement Letter together governed the Firm's engagement with Defendants. (Id. ¶¶ 10-11.)  The Firm subsequently filed an action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, captioned Ricardo Berner and Practiko, LLC v. WM Partners, LP, et al. (the "Florida Action").  (Id. ¶ 6.)

---

[2]         WMP is not party to the instant litigation.

Beginning in February 2018, the Firm sent monthly fee invoices to Defendants, which Defendants received at or around the same time each invoice was issued. (Id. ¶¶ 20, 23.) There is no dispute relevant to the instant motion practice regarding the invoices billed from February 2018 to May 2018. (Id. ¶ 24.) The Firm contends that, beginning with the June 2018 invoice, Defendants began to accrue a balance. (Id. ¶ 25.) The Firm now seeks to recover (1) the allegedly unpaid balance from the July 2018 invoice, in the amount of $23,920.14; (2) fees invoiced from December 2018 through November 2019, in the amount of $95,389.25; and (3) interest charged at fifteen percent on the outstanding balance, totaling $50,687.67. (See docket entry no. 103 ("Pl. Mem.") at 17-18.)

<u>July 2018 Invoice</u>

On July 9, 2018, the Firm sent the July 2018 invoice, which included allegedly unpaid fees carried over from the Firm's June 2018 invoice, to Defendants by email. (56.1 Resp. ¶¶ 26, 28.) Berner replied roughly seven hours later, stating, "Let's definitely talk about this. I cannot accept this invoice." (Id. ¶ 29.) Defendants contend that they rejected and objected to the invoice because it was "excessive," and that the Firm had billed for "things [to which Defendants do not] agree[.]" (Id. ¶¶ 29, 33.)

After conferring, the Firm alleges, the parties reached an "initial understanding" that the parties would "wait to resolve the fees and expenses charged in the July 2018 invoice." (Id. ¶ 33.) Defendants, on the other hand, contend that the parties reached an oral agreement (the "Verbal Agreement") that Defendants "would keep on [making] some payments as [they] can, and the differences [regarding the amounts billed would be resolved] at the end[,]" and that, "as long as [Defendants kept] on paying some payments, Rakower [would] continue [its representation.]" (Id. ¶¶ 33-34 (internal quotation marks omitted).) Defendants allege that the

parties repeatedly agreed to this understanding. (Id.) On July 12, 2018, Defendants remitted a

payment to the Firm of $15,000. (Id. ¶ 34.) The Firm asserts that this payment "cleared the

balance due and owing on the June 2018 invoice," whereas Defendants contend that this

payment was not intended to be applied to any particular outstanding balance but, rather, was

paid pursuant to the Verbal Agreement. (Id.)

On August 16, 2018, the Firm emailed Defendants the August 2018 invoice. (Id.

¶ 35.) Email communications between the parties regarding the August 2018 invoice indicate

that there remained confusion regarding Defendants' payment obligations. In the cover email for

the August 2018 invoice, the Firm stated:

> Our understanding was that you would always meet your obligations in a
> timely fashion and also leave at least a minimal retainer with the Firm. I
> know these fees are higher than you would like, and I have mentioned to
> you that I am amenable to a change in the fee structure by applying a
> portion towards a contingency. But the one thing I cannot do is continue
> working with a large outstanding balance.

(Id. ¶ 36.) Berner responded roughly an hour later, stating:

> We should talk, extremely surprised to see this after the conversation we
> just had about a few weeks back. For some reason reality is not in line
> with our understanding from past conversations at all. For some reason I
> get an impression when we speak that departs from reality.
>
> I'll have to review all the billing in detail, please send all billing to date in
> excel or word format so I can review it (not PDF).

(Id. ¶ 37; docket entry no. 122-5.)

In response, on August 17, 2018, the Firm sent copies of all invoices issued from

February 2018 to August 2018. (56.1 Resp. ¶ 38.) While the Firm alleges that Defendants never

responded to this email, Defendants allege that they raised objections to all invoices issued by

the Firm from February 2018 to August 2018, both verbally and in writing. (Id.) The Firm also

stated in an email to Defendants in November 2018 that all previous invoices had been resolved, apart from the July invoice.  (Id. ¶¶ 40-41.)

On November 29, 2018, Defendants sent the Firm a payment in the amount of $36,843.76, and on December 10, 2018, Defendants made a further payment of $15,000.  (Id. ¶¶ 42, 45.)  In connection with the December 2018 payment, Berner stated, "Here is a partial payment for July. I know we haven't resolved that issue fully, but thought I [sic] send you at least a partial payment for now."  (Id. ¶ 46.)  The Firm asserts that Defendants' November 2018 and December 2018 payments constituted partial payment of the July invoice.  (Id. ¶¶ 42, 45.)  The Firm applied $1,823.31 of the November 2018 payment and all of the December 2018 payment towards the July invoice.  (Id. ¶¶ 43, 45.)  Although Defendants concede that they intended the December 2018 payment to be applied to the July 2018 invoice, they contend that the November 2018 payment was not made to clear any balance due and owing on any particular invoice, but rather was made pursuant to the purported Verbal Agreement.  (Id. ¶¶ 42-46.)

### December 2018 to November 2019 Invoices

The Firm alleges that Defendants again began to accrue an outstanding balance on invoices issued from December 2018 through November 2019.  (Id. ¶ 47.)  The parties dispute whether Defendants objected to the invoices sent during this time period, which totaled $95,389.25.  (Id. ¶ 60.)  Defendants allege that they made verbal and written objections to most, if not all, of the December 2018 to November 2019 invoices on the grounds that the invoices were excessive.  (Docket entry no. 109-1 ("Berner First Tr.") at 137, 146-47; see docket entry no. 125 ("56.1 Reply") ¶¶ 120-24.)  Berner testified to this effect at his deposition, but did not identify specific emails containing written objections or written objections made in any other form during this time period.  (See Berner First Tr. at 137, 146-47; 56.1 Reply ¶¶ 120-24.)

Defendants remitted payment to the Firm during this time period as follows: $20,000 on January 14, 2019 (56.1 Resp. ¶ 48); $10,000 on February 4, 2019 (id. ¶ 49); $10,000 on March 11, 2019 (id. ¶ 50); $20,000 on March 15, 2019 (id. ¶ 51); $12,000 on April 29, 2019 (id. ¶ 52); $4,000 on July 2, 2019 (id. ¶ 53); $8,000 on August 6, 2019 (id. ¶ 54). Defendants have not remitted any payments to the Firm since August 6, 2019. (Id. ¶ 55.) In or about January 2020, the Firm withdrew from the Florida Action and ceased its representation of Defendants. (Id. ¶ 56.) The Firm has continued to issue monthly invoices to Defendants reflecting the imposition of interest charges. (Id. ¶¶ 57-58.)

The Firm asserts that each of Defendant's seven payments made from January 14, 2019, through August 6, 2019, were partial payments towards Defendants' outstanding balance as reflected in the various invoices. (Id. ¶¶ 48-54.) Defendants contend that these payments were not intended to be directed to any specific invoice, but were instead made pursuant to the alleged Verbal Agreement. (Id. ¶¶ 48-54, 64.) On March 2, 2020, less than two months after the Firm withdrew from representation, Berner emailed the Firm, stating:

> As I always stated my intention is to pay you as soon as I have the funds which I do hope to be soon. As for the amount, I cannot confirm that right now. Have always honored what we had agreed upon. We do have a couple of months that you and I agree to review and hadn't had the chance to do it.
>
> Truly hope the funds come in soon and we can resolve this promptly and in an amicable manner.

(Id. ¶ 63; docket entry no. 109-24.) Defendants also assert that no interest is due on any of the disputed fee amounts at issue in the instant Motion because "the parties had agreed that Plaintiff would not charge late interest[]." (56.1 Resp. ¶ 62.) The Firm, on the other hand, takes the position that it had only offered to waive interest in the context of a deal for the prompt payment

of all of the stated outstanding balances that Defendants did not accept, and thus that the original engagement letter (including its interest provision) still governs.  (56.1 Reply ¶ 129.)

Procedural History

On May 24, 2021, Plaintiff initiated this action in the Supreme Court of the State of New York, County of New York. (Docket entry no. 1-2.)  Pursuant to 28 U.S.C. sections 1441, 1446 and 1332, Defendants removed the action to this Court on July 28, 2021.  (Docket entry no. 1.)  Plaintiff filed an Amended Complaint on January 12, 2022, asserting six claims in total: (1) breach of contract, (2) breach of implied in fact contract, (3) quasi-contract / unjust enrichment (4) quasi-contract / quantum meruit, (5) promissory estoppel, and (6) account stated. (Docket entry no. 25.)  On March 10, 2023, Plaintiff moved for summary judgment solely as to its account stated claim, seeking to recover a total of $169,997.06, representing the remaining fees billed under the July 2018 invoice, the December 2018 to November 2019 invoices, and the interest that had allegedly accrued on these unpaid fees.  (See Motion; Pl. Mem. at 17-18.)  The case was thereafter transferred to the undersigned.

DISCUSSION

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is considered material if it "might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether there is a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary

judgment is sought." Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam) (citation omitted).

        The Court begins by determining which body of law governs the instant dispute, that of New York or that of Florida, before turning to the merits of Plaintiff's claims.

Choice of Law

        A federal court "sitting in diversity applies the choice-of-law rules of the state in which it sits." McPhee v. Gen. Elec. Int'l, Inc., 736 F. Supp. 2d 676, 679 (S.D.N.Y. 2010) (citation omitted). Under New York choice of law rules, and absent an express choice of law provision, a court must first determine "whether there is an actual conflict between the laws of the jurisdictions involved." GlobalNet Financial.com, Inc. v. Frank Crystal & Co., 449 F.3d 377, 382 (2d Cir. 2006) (citations omitted). If the substantive rules of the jurisdictions are the same, "a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004) (citation omitted).

        Plaintiff asserts that New York law applies to its account stated claim, whereas Defendants argue that Florida law governs. (Docket entry no. 118 ("Defs. Mem.") at 6-7; docket entry no. 123 ("Reply Mem.") at 2-5.) Plaintiff first argues that Defendants have waived any choice of law argument because Defendants relied on New York law in a number of preliminary filings, including a joint letter (docket entry no. 8), their opposition brief to the Firm's motion to disqualify Defendants' counsel (docket entry no. 34), and letters to the Court regarding discovery issues (docket entry nos. 40, 44, 47). Plaintiff correctly notes that, "[w]hen a party assumes in its briefs that a particular jurisdiction's law applies, it gives implied consent . . . sufficient to establish choice of law." Tesla Wall Sys., LLC v. Related Cos., L.P., No. 17-CV-5966-JSR,

2018 WL 4360777, at *2 (S.D.N.Y. Aug. 15, 2018) (internal quotes and citations omitted); see also Quanta Lines Ins. Co. v. Invs. Cap. Corp., No. 06-CV-4624-PKL, 2009 WL 4884096, at *7 (S.D.N.Y. Dec. 17, 2009) (finding that party had waived choice of law issue "by applying New York law in support of its claims throughout its briefing, but for 3.5 pages near the end of its opposition brief[,]" where it requested that the Court apply Massachusetts law).

   However, while Defendants did rely on New York law in the preliminary matters highlighted by Plaintiff, they did not rely on New York law in opposing the instant Motion, which is the first time Defendants have had the opportunity to brief these substantive issues at length. Arguments for waiver are generally accepted where a party concedes in its substantive briefing that a particular jurisdiction's law applies, see, e.g., Tesla Wall Sys., LLC, 2018 WL 4360777, at *2, or the parties have reached a sufficiently late stage of litigation without raising a choice of law dispute, see, e.g., Reed Constr. Data Inc. v. McGraw-Hill Cos., 49 F. Supp. 3d 385, 423 (S.D.N.Y. 2014), aff'd, 638 F. App'x 43 (2d Cir. 2016) (explaining that "[w]hat constitutes a 'late stage' is somewhat flexible," and gathering case law in which courts found waiver of choice of law post-settlement and on appeal). Neither circumstance is presented here. Additionally, courts do not generally accept waiver of choice of law arguments absent a showing of prejudice. See, e.g., Reed Constr. Data Inc., 49 F. Supp. 3d at 423; Cambridge Cap. LLC v. Ruby Has LLC, 675 F. Supp. 3d 363, 417 n.11 (S.D.N.Y. 2023). Plaintiff has not argued that considering the choice of law argument raised in Defendants' opposition brief and addressed in Plaintiff's reply brief would result in prejudice. The Court, accordingly, finds that Defendants have not waived their position that Florida law should govern the substantive issues in this action.

   Nevertheless, the Court finds that it may properly apply New York law in resolving the sole claim before it on this motion practice, relating to the account stated issue,

because there is no actual conflict between Florida and New York law with respect to that cause
of action.  Under the law of either jurisdiction, a plaintiff asserting a claim for an account stated
must establish that "'(1) an account was presented; (2) it was accepted as correct; and (3) [the]
debtor promised to pay the amount stated.'"  IMG Fragrance Brands, LLC v. Houbigant, Inc.,
679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009) (citation omitted) (applying New York law); see also
F.D.I.C. v. Brodie, 602 So. 2d 1358, 1361 (Fla. Dist. Ct. App., 3d Dist. 1992) (explaining that,
under Florida law, an account stated claim requires the plaintiff to demonstrate that the parties
had agreed "that a certain balance is correct and due" and that there was a promise to pay that
balance.  For purposes of an account stated claim, a debtor-party's agreement or promise to pay
a sum of money allegedly due and owing, i.e., an account, may be explicit or inferred based on
the debtor's conduct.  IMG Fragrance Brands, LLC, 679 F. Supp. 2d at 411 (explaining that a
party's agreement to the account balance and promise to pay may be inferred if the party
receiving a statement of account, e.g., an invoice, keeps it without objecting within a reasonable
time or makes partial payment); Venus Concept USA Inc. v. Transforming Arts, Inc., No. 21-
CV-22384-Bloom/Otazo-Reyes, 2021 WL 5163412, at *5 (S.D. Fla. Nov. 5, 2021) ("'A plaintiff
may prove a prima facie case for account stated by proffering evidence that the account was
rendered under circumstances which raise a presumption of assent.'" (citation omitted)).

        Defendants argue that, "[a]lthough the elements of the cause of action are similar,
its application [under New York and Florida law] differs in several ways."  (Defs. Mem. at 7.)
Defendants argue, first, that in Florida, unlike in New York, failure to object to a demand for
payment within a reasonable amount of time does not "necessarily" establish liability.  (Id. at 8.)
Florida case law clearly establishes, however, that a defendant's failure to object within a
reasonable amount of time, standing alone, can establish liability.  See, e.g., Brodie, 602 So. 2d

at 1361 (explaining that "the practice of periodic billing in the regular course of dealing may establish an account stated if no objection to the amount of the bill is made within a reasonable time" (citation omitted)); Venus Concept USA Inc., 2021 WL 5163412, at *5 (same); Ferrion, LLC v. L.B. Foster Co., No. 6:21-cv-2040-RBD-EJK, 2022 WL 3597087, at *3 (M.D. Fla. May 16, 2022) ("There was an invoice, Defendant failed to object, and then it failed to pay; these allegations satisfy the requirement of an account stated claim.").  New York law is not materially different.

Defendants similarly argue that there is "no caselaw supporting the proposition that partial payments can be the basis for assent to the account stated [under Florida law]." (Defs. Mem. at 9.)  As in New York, however, a plaintiff may establish an account stated claim under Florida law where a debtor has, through their conduct, impliedly assented to that account, and courts applying Florida law have considered a debtor's partial payment as part of that analysis.  See, e.g., Rx Imaging of SWFL, LLC v. Irving Radiology, Inc., 405 So. 3d 394, 396-97 (Fla. Dist. Ct. App., 6th Dist. 2023) (reversing trial court's grant of summary judgment on account stated claim where trial court failed to address facts that plaintiff billed defendant for expenses and defendant "made partial payment on those invoices without raising specific objections" to the services included on the invoices); Robertson v. Goethel, 369 So. 2d 365, 365 (Fla. Dist. Ct. App. 1979) (per curiam) (affirming summary judgment where defendant received bills for legal and accounting services and paid periodically on various ones without protest).

In light of the foregoing persuasive authority, the Court agrees with courts that have considered the issue, see, e.g., Park Jensen Bennett LLP v. Brooks, No. 17-cv-80973, 2018 WL 2694584, at *3 (S.D. Fla. May 4, 2018), and found that that there is no actual conflict

between the two bodies of law with respect to an account stated claim.  The Court will therefore apply New York law in analyzing the instant dispute.

<u>Account Stated Claim</u>

Plaintiff asserts an account stated claim for the allegedly remaining balance of the July 2018 invoice, the invoices billed from December 2018 through November 2019, and the interest allegedly due and owing on all disputed invoices.  Because the Court finds, for the reasons that follow, that there are genuine factual disputes regarding Defendants' assent to Plaintiff's invoices, Plaintiff is not entitled to summary judgment on its liability claim for what it characterizes as the outstanding balances.  Because Plaintiff's entitlement to interest necessarily depends on whether it is entitled to recover for the billed amounts on which the interest allegedly accrued and whether there was any agreement to forgo the accrual of interest, the Court need not address Plaintiff's claim for outstanding interest separately at this juncture.

As explained above, "[a]n account stated is an agreement between parties to an account based upon prior transactions between them with respect to the correctness of the account items and balance due." <u>Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.</u>, 244 F.R.D. 204, 216 (S.D.N.Y. 2007) (citation omitted).  To succeed on an account stated claim, a party must establish that "(1) an account was presented; (2) it was accepted as correct; and (3) [the] debtor promised to pay the amount stated." <u>Camacho Mauro Mulholland LLP v. Ocean Risk Retention Grp., Inc.</u>, No. 09-CV-9114, 2010 WL 2159200, at *2 (S.D.N.Y. May 26, 2010). The second and third elements of an account stated claim may be met where the "party receiving a statement of account keeps it without objecting to it within a reasonable time" or "the debtor makes partial payment," <u>i.e.</u>, where the debtor-party impliedly agrees to pay the amount the billing party asserts is due and owing.  <u>IMG Fragrance Brands, LLC</u>, 679 F. Supp. 2d at 411

(quoting <u>LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham</u>, 185 F.3d 61, 64 (2d Cir. 1999)).

Plaintiff argues that Defendants assented to liability for the outstanding balance of the July 2018 invoice as well as the invoices from December 2018 to November 2019.  Plaintiff contends that Defendants never made timely or specific objections to the December 2018 through November 2019 invoices and that they made partial payments toward their outstanding balance, all of which indicated Defendants' implied assent.  (Pl. Mem. at 11-14.)  As for the July 2018 invoice, Plaintiff argues that Defendants impliedly assented to liability for the amount charged, despite their initial rejection of the invoice, because their objections were not particularized and because Defendants made two partial payments towards the invoice.  (<u>Id.</u> at 15.)  While Plaintiff concedes that "Defendants took issue with the size of the July 2018 invoice," Plaintiff contends that Defendants "never articulated a basis as to why the fees and expenses reflected in the invoice were unreasonable in light of the services rendered[,]" and that "[s]uch vague and conclusory objections to invoices, even if timely rendered" are insufficient to defeat summary judgment on an account stated claim.  (<u>Id.</u>)

Defendants allege that they repeatedly objected to the invoices orally and in writing.  (56.1 Resp. ¶¶ 29, 33.)  After receiving the July 2018 invoice, Berner immediately stated that he "[could not] accept this invoice."  (<u>Id.</u> ¶ 29.)  Berner additionally testified that he objected to the July 2018 invoice on the basis that the work being done was "excessive," "totally unnecessary," and "duplicati[ve]."  (Docket entry no. 109-1 ("Berner First Tr.") at 146; docket entry no. 109-7, at 254-61.)  An email sent by Berner on November 12, 2018, indicates that the amount on the July 2018 invoice remained in dispute months later.  In that email, Berner stated, "Besides July, . . . all invoices have been paid timely."  (56.1 Resp. ¶ 40.)  As for the other

invoices, Berner testified that he consistently raised objections for invoices during these months and thus did not assent to the invoices billed.   (Id. ¶¶ 47, 64; Berner First Tr. at 137, 146-147.) Berner also sent an email on March 2, 2020, roughly two months after Plaintiff had withdrawn from the Florida Action, indicating that Defendants had not yet assented to the final balance. (56.1 Resp. ¶ 63; docket entry no. 109-24, at 2.)  Berner specifically wrote that his intention was to pay as soon as he had the funds to do so, which he hoped to be soon, but:

> As for the amount, I cannot confirm that right now. . . We do have a couple of months that you and I agree[d] to review and hadn't had the chance to do it.
>
> Truly hope the funds come in soon and we can resolve this promptly and in an amicable manner.

(Docket entry no. 109-24, at 2.)  In short, despite stating an intention to pay, Berner maintained that there were invoices for at least a "couple of months" for the December 2018 through November 2019 period to which he had not yet assented.

Courts have found verbal objections sufficient to negate implied assent to an account stated so long as the objections are directed to specific invoices, and case law does not indicate that objections must be granular in nature or particularized to specific invoice entries. See Boies, Schiller & Flexner LLP v. Modell, 11 N.Y.S.3d 60, 62 (App. Div., 1st Dep't 2015) (finding triable issue of fact regarding consent to disputed amounts where "defendant averred that she called plaintiff within a day or two after receiving each invoice, spoke to the lawyer primarily handling her case and her assistant, and objected that she did not understand the charges, that they appeared to be unwarranted, and that she could not pay"); Herrick, Feinstein LLP v. Stamm, 746 N.Y.S.2d 712, 714 (App. Div., 1st Dep't 2002) (finding that defendant's alleged statement that he was "'very troubled by the size of the bills then in hand' was sufficiently specific and timely to negate any inference of assent to the invoices"); cf., e.g., FTI

Consulting, Inc. v. Rossi, No. 03-CV-4033-RWS, 2004 WL 359378, at *4 (S.D.N.Y. Feb. 25,
2004) (finding that defendant's "vague concern" regarding billing, directed to earlier statements
not in dispute, was insufficient to defeat summary judgment on plaintiff's account stated claim).
Defendants' timely objections, while not directed to specific entries, are consistent with the types
of objections courts have found sufficient to negate implied assent to statements of accounts.

   Plaintiff's argument that Defendants impliedly assented to the invoices by making
partial payments is unpersuasive.  Courts have found that partial payments are insufficient to
establish implied assent supporting an account stated claim under New York law when they are
paired with specific objections by the debtor.  See Michael B. Shulman & Assocs., P.C. v.
Canzona, 161 N.Y.S.3d 291, 293 (App. Div., 2d Dep't 2022) (finding triable issue of fact raised
where defendant testified that "he made certain payments based only on the plaintiff's threats
that work on the case would cease if he did not" and that he made specific oral objections to the
disputed invoice during a phone call with plaintiff (citations omitted)).  In the instant case, only
one of the payments toward the July invoice is undisputed by Defendants—the December 2018
payment (56.1 Resp. ¶ 45)—and, in making that payment, Berner reiterated his assertion that the
full amount of the invoice was still in dispute.  Specifically, Berner wrote in an email containing
a copy of the December 2018 wire transfer: "Here is a partial payment for July. I know we
haven't resolved that issue fully, but thought I send [sic] you at least a partial payment for now."
(Id. ¶ 46 (emphasis added).)

   Defendants additionally assert that partial payments were made pursuant to the
parties' alleged Verbal Agreement, i.e., that Defendants would "keep on [making] some
payments as [they] can, and the differences [they would] resolve at the end."  (Id. ¶ 33.)  While
partial payments may indicate implied assent to statements of account, IMG Fragrance Brands,

LLC, 679 F. Supp. 2d at 411, Defendants assert that these payments were not addressed towards particular invoices, but rather paid pursuant to their Verbal Agreement with Plaintiff. (56.1 Resp. ¶¶ 33, 48-54.) The seven partial payments made by Defendants from January 2019 through August 2019 are round figures of varying amounts that do not match the balance of any single invoice, which circumstantially supports Defendants' assertion that none of the invoices had been accepted as proper (id. ¶¶ 48-54), and Plaintiff proffers no evidence indicating that Defendants intended or consented to these partial payments being applied to specific outstanding invoices.

Finally, although Plaintiff argues that Berner's deposition testimony regarding his objections made to invoices during this time period is self-serving and thus should be disregarded, "[t]he testimony of a party to a proceeding is usually 'self-serving' and a court may not disregard such testimony simply on this basis." Fernandez v. HR Parking, Inc., 407 F. Supp. 3d 445, 448 n.4 (S.D.N.Y. 2019) (citations omitted). "Even a self-serving affidavit can establish a genuine dispute of fact so long as the affidavit does not contradict the witness's prior testimony." Dye v. Kopiec, No. 16-CV-2952-LGS, 2016 WL 7351810, at *3 (S.D.N.Y. Dec. 16, 2016) (citing Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996)). Because Berner's deposition testimony is consistent with his March 2, 2020 email and Plaintiff has not identified any conflicting statements by Berner in the record, the Court finds that there is no basis to disregard Berner's deposition testimony in the context of this motion practice.

In sum, Defendants have sufficiently identified a genuine dispute as to the material factual question of whether Berner impliedly assented to the Firm's invoices. The Court, accordingly, denies summary judgment on Plaintiff's account stated claim to the extent it is premised on these invoices.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for summary judgment on its account stated claim is denied in its entirety. This Memorandum Order and Opinion resolves docket entry no. 100.

The Court will refer this action to the designated Magistrate Judge for general pretrial management following entry of this Memorandum Opinion and Order.

SO ORDERED.

Dated: New York, New York
      September 23, 2025

                                         /s/ Laura Taylor Swain
                                       LAURA TAYLOR SWAIN
                                       Chief United States District Judge